UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------

SHIVA STEIN,

       Plaintiff,

v.

LHC GROUP, INC., KEITH G. MYERS, MONICA F. AZARE, TERI G. FONTENOT, JONATHAN D. GOLDBERG, CLIFFORD S. HOLTZ, JOHN L. INDEST, RONALD T. NIXON, W. EARL REED, III, and WILLIAM BRENT TURNER,

       Defendants.

----------------------------------------------------------

Civil Action No. 22-cv-3551

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against LHC Group, Inc. ("LHC Group or the "Company") and the members LHC Group's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of LHC Group by affiliates of UnitedHealth Group Incorporated ("UnitedHealth").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on April 29, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Lightning Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of UnitedHealth, will merge with and into LHC Group with LHC Group surviving as a wholly-owned subsidiary of UnitedHealth (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 28, 2022 (the "Merger Agreement"), each LHC Group stockholder will receive $170.00 in cash (the "Merger Consideration") for each LHC Group share owned.

1.      As discussed below, Defendants have asked LHC Group's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, SVB Securities LLC ("SVB Securities") and Jefferies LLC ("Jefferies" and with SVB Securities, the "Financial Advisors") in support of their fairness opinions.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to LHC Group's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District, and the Company's proxy solicitor, Okapi Partners LLC, is also headquartered in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of LHC Group stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Keith G. Myers, a co-founder of the Company, has served as a member of the Board since 1994 and is the Chairman of the Board and the Chief Executive Officer of the Company.

9. Individual Defendant Monica F. Azare has served as a member of the Board since 2007.

10. Individual Defendant Teri G. Fontenot has served as a member of the Board since 2019.

11. Individual Defendant Jonathan D. Goldberg has served as a member of the Board since 2018.

12. Individual Defendant Clifford S. Holtz has served as a member of the Board since 2018 and is the Lead Director.

13. Individual Defendant John L. Indest has served as a member of the Board since 2000.

14. Individual Defendant Ronald T. Nixon has served as a member of the Board since 2001.

15. Individual Defendant W. Earl Reed, III has served as a member of the Board since 2018.

16. Individual Defendant William Brent Turner has served as a member of the Board since 2014.

17. Defendant LHC Group is a Delaware corporation and maintains its principal offices at 901 Hugh Wallis Road South, Lafayette, LA 70508. The Company's stock trades on the NASDAQ Global Select under the symbol "LHCG."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.    <u>**The Proposed Transaction**</u>

20.    LHC Group, a health care provider, specializes in the post-acute continuum of care primarily for Medicare beneficiaries in the United States. It operates through five segments: Home Health Services, Hospice Services, Home and Community-Based Services, Facility-Based Services, and Healthcare Innovations (HCI). The Home Health Services segment offers skilled nursing, medically oriented social services and physical, occupational, and speech therapy. The Hospice Services segment provides pain and symptom management accompanied by palliative medication, emotional and spiritual support, inpatient and respite care, homemaker services, dietary counseling, family bereavement counseling, and social worker visits. Its Home and Community-Based Services segment offers range of services, such as assistance with grooming, medication reminders, meal preparation, assistance with feeding, light housekeeping, respite care, transportation, and errand. The Facility-Based Services segment treats patients with severe medical conditions who require a high-level of care and frequent monitoring by physicians and other clinical personnel. This segment serves patients suffering from respiratory failure, neuromuscular and cardiac disorders, non-healing wounds, renal disorders, cancer, head and neck injuries, and mental disorders, as well as treats patients diagnosed with musculoskeletal impairments; and operates nursing facilities, family health center, rural health clinic, and physician practice, as well as offers physical therapy services. The HCI segment provides strategic health management services to accountable care organizations. As of December 31, 2021, it operated 557 home health services locations, 170 hospice locations, 136 community-based service locations, 11 long-term acute care hospitals with 12 locations, and 14 HCI locations. The Company was founded in 1994 and is based in Lafayette, Louisiana.

21. On March 29, 2022, the Company and UnitedHealth jointly announced the Proposed Transaction:

> EDEN PRAIRIE, Minn. & LAFAYETTE, La.--(BUSINESS WIRE)--Optum, a diversified health services company, and LHC Group (NASDAQ: LHCG), a national patient-focused provider of high-quality in-home health care services, have agreed to combine to further strengthen their shared ability to advance value-based care, especially in the comfort of a patient's own home. The agreement calls for the acquisition of LHC Group's outstanding common stock for $170 per share.
>
> The combination of LHC Group with Optum Health, which works with over 100 health plans, unites two organizations dedicated to providing compassionate and comprehensive care to patients and their families. LHC Group's history of high-quality home and community-based care matched with Optum's extensive value-based care experience and resources will accelerate the combined companies' ability to deliver integrated care, improving outcomes and patient experiences.
>
> "LHC Group's sophisticated care coordination capabilities and its warm, human touch is so important for home care, and will greatly enhance the reach of Optum's value-based capabilities along the full continuum of care, including primary care, home and community care, virtual care, behavioral health and ambulatory surgery," said Dr. Wyatt Decker, CEO, Optum Health. "We greatly admire how the people of LHC Group have created a culture that enables them to be a trusted health care partner to patients and their families when they need it the most, and we look forward to working with and learning from them."
>
> "Since our founding in 1994, 'it's all about helping people' has been the core of our mission, and as part of the Optum team and its value-based capabilities, we will be able to expand our patient-centered mission and help drive best care practices across the country," said Keith G. Myers, LHC Group's chairman and CEO. "Working together as organizations committed to caring for the most vulnerable in society will help us more effectively and efficiently deliver high quality and increasingly value-based care in the home." LHC Group's 30,000 employees, including frontline care providers and administrative and support personnel, provide more than 12 million annual in-home patient-focused interventions and is widely recognized as one of the highest-quality providers of in-home care, with quality scores consistently running more than one-third higher

than industry norms. The LHC Group leadership team will continue forward as part of Optum Health.

The agreement calls for the acquisition of LHC Group's common stock for $170 per share in cash and is expected to close in the second half of 2022 subject to LHC Group shareholder approvals, regulatory approvals and other customary closing conditions. Co-founders Keith and Ginger Myers will personally invest $10 million in UnitedHealth Group stock following the close of the combination.

The acquisition is expected to be neutral to UnitedHealth Group's outlook for adjusted net earnings per share in 2022, modestly accretive in 2023, and advancing strongly in subsequent years.

**About Optum**
Optum is a leading information and technology-enabled health services business dedicated to helping make the health system work better for everyone. With more than 190,000 people worldwide, Optum delivers intelligent, integrated solutions that help to modernize the health system and improve overall population health. Optum is part of UnitedHealth Group (NYSE: UNH). For more information, visit www.Optum.com.

**About LHC Group**
LHC Group, Inc. is a national provider of in-home healthcare services and innovations, providing quality, value-based healthcare to patients primarily within the comfort and privacy of their home or place of residence. LHC Group's services cover a wide range of healthcare needs for patients and families dealing with illness, injury, or chronic conditions. The company's 30,000 employees deliver home health, hospice, home- and community-based services, and facility-based care from 964 locations in 37 states and the District of Columbia – reaching 60 percent of the U.S. population aged 65 and older. LHC Group is the preferred in-home healthcare partner for 435 leading hospitals around the country. For more information, visit www.LHCGroup.com. SVB Leerink and Jefferies LLC served as financial advisors to LHC Group.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that LHC Group's stockholders are provided with the material information that has

been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

23.    On April 29, 2022, LHC Group filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.    The Proxy Statement fails to provide material information concerning financial projections by LHC Group management and relied upon by SVB Securities in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that LHC Group management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Net Service Revenue – Organic, Net Service Revenue – M&A, Adjusted EBITDA – NCI – Organic, and Adjusted EBITDA – NCI – M&A, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to SVB Securities' *Publicly Traded Company Analysis of SVB Securities*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

30. With respect to SVB Securities' *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis, including: (i) the enterprise value of each transaction and (ii) each target company's EBITDA.

31. With respect to SVB Securities' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the after-tax unlevered free cash flows expected to be generated by the Company over the period beginning on January 1, 2022 and ending on December 31, 2026 and all line items used to calculate the cash flows; (ii) the range of terminal values for LHC Group; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.5% to 3.5%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 8.5% to 9.5%; (v) the Company's weighted average cost of capital; and (vi) the number of fully diluted shares of Company common stock outstanding as of March 18, 2022.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. With respect to SVB Securities' one-year forward stock price targets analysis, the Proxy Statement fails to disclose the fourteen Wall Street research analysts and their target stock prices.

33. With respect to SVB Securities' premia paid analysis, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

34. With respect to Jefferies' *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

35. With respect to Jefferies' *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

36. With respect to Jefferies' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the after-tax unlevered free cash flows expected to be generated by the Company for the years ending December 31, 2022 through December 31, 2026 and all line items used to calculate the cash flows; (ii) the implied terminal values for LHC Group; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 4.5% to 5.5%; and (iv) the inputs and assumptions underlying the use of the range of discount rates of 10.6% to 11.6%.

37. With respect to Jefferies' premia paid analysis, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

38. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of LHC Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of LHC Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of LHC Group, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of LHC Group, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 3, 2022                                    **MELWANI & CHAN LLP**

                                                    By:  */s/ Gloria Kui Melwani*

                                              _____
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*